## LUCILE THOMPSON v. LUVERNE THOMPSON.[1]

December 24, 1948.

No. 34,788.

*Leo J. Seifert* and *Edman & Edman,* for appellant.
*C. L. Erickson,* for respondent.

PETERSON, JUSTICE.

The only question raised on this appeal is whether the evidence sustains the trial court's finding that defendant treated plaintiff in a cruel and inhuman manner.

The parties were married in 1945. Plaintiff was then about 30 years old and defendant about 43 years. It was defendant's first marriage and plaintiff's second, she being then a widow with a three-year-old daughter, Christina Rudebeck, by a prior marriage. Although defendant owned a building in which there were several apartments and plaintiff later became the owner of a house, the parties lived with plaintiff's parents until they separated a little over two years after their marriage. Little Christina lived with them. About a year after their marriage a son, James Curtis, was born.

[1]Reported in 35 N. W. (2d) 289.

Prior to their marriage defendant courted plaintiff with ardor. They went out together five or six times a week and apparently had a rather joyous time. About two months after their marriage defendant's ardor cooled, and his attitude toward plaintiff changed. From that time on he became stubborn, sullen, and inconsiderate. He always insisted on having his own way. Except for two occasions when he took her to shows, he refused to take her out for even so much as a walk, although she requested him many times to do so. Plaintiff testified that she did not expect that they would go out after their marriage as much as they did before they were married, but that she thought they ought to go out at least once a month or so. On numerous occasions defendant humiliated plaintiff by bad table manners, by bringing home some dirty candy with cobwebs on it which he got out of a garbage can and which he wanted her and her child to eat, and by walking out on company and going to bed, leaving plaintiff to entertain the company and to apologize for his misconduct. Although during the two years they lived together plaintiff purchased only one dress and two pairs of shoes, defendant falsely charged her with extravagance with respect to purchases of clothes. Plaintiff wanted to establish a home of their own away from her parents. Defendant was willing to do so if she would move into one of his two-room apartments with a small porch attached, but he was unwilling to clean the building of bedbugs, even though plaintiff offered to pay half the cost thereof out of her own funds. The baby, James Curtis, was sick more or less and required considerable attention during the night. Plaintiff had to get up from 15 to 20 times a night to care for him. She became so weak from being up nights and taking care of the baby that she could hardly walk. Defendant refused to help, giving as a reason that plaintiff could get needed rest during the day. After the birth of their son, defendant slapped and abused Christina whenever she came near the baby. As a consequence of defendant's conduct, extreme tension existed in the home of the parties, and plaintiff became nervous and unable to sleep. In order to escape from the tension during the evening hours when defendant was at home, she took employment

as a telephone operator. Finally, she commenced this action for divorce, for which the trial court ordered judgment, together with the custody of their child and an allowance for his support.

Unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other or so utterly destroys the peace of mind of the other as to seriously impair the bodily health or endanger the life of the other or utterly destroys the legitimate ends and objects of matrimony constitutes cruel and inhuman treatment under M. S. A. 518.06(3), although no physical or personal violence may be inflicted or even threatened. Williams v. Williams, 101 Minn. 400, 112 N. W. 528.[2] A long-continued course of conduct consisting of neglect of the wife by the husband, accompanied by other unjustifiable conduct such as contemptuous treatment and carping criticism (Mullen v. Mullen, 135 Minn. 179, 160 N. W. 494; Grove v. Grove, 239 Ky. 32, 39 S. W. [2d] 193); refusal to take her out (Kreplin v. Kreplin, 110 Wash. 135, 188 P. 14); faultfinding and causing her humiliation (Bickle v. Bickle, 194 Minn. 375, 260 N. W. 361); disregard of the proprieties and good manners (Low v. Low, 232 Iowa 1114, 7 N. W. [2d] 367); and abuse of her children by prior marriage, except when justified as reasonable chastisement (Cooper v. Cooper, 78 Mich. 316, 44 N. W. 381; see, Murchison v. Murchison [Tex. Civ. App.] 171 S. W. 790), constitutes cruel and inhuman treatment within the rule where it affects the wife in the manner mentioned.

Here, the evidence shows such neglect, accompanied by other acts of cruelty of the sort enumerated. Thereby, not only has plaintiff's happiness been destroyed, but her health has been impaired. The evidence sustains the finding of cruel and inhuman treatment. By his conduct, defendant has destroyed plaintiff's peace of mind and impaired her health. Cruelty of the sort here inflicted by defendant

[2] The rule of the Williams case has been followed and applied in subsequent cases. Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164; Crowley v. Crowley, 219 Minn. 341, 18 N. W. (2d) 40; 2 Dunnell, Dig. & Supp. §. 2778.

on plaintiff may be quite as hurtful as physical punishment. As we said in the Mullen case (135 Minn. 182, 160 N. W. 495):

"An unvarying course of faultfinding, insult and oppression, unrelieved by a pleasant word, and persisted in for years, may become more intolerable than blows, and we find no sufficient ground for saying that the trial court erred in its conclusion."

So it is here.

In addition to her regular costs and disbursements, plaintiff is awarded the sum of $250 as counsel fees on the appeal.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.